**Miscellaneous Docket No. ____**

# United States Court of Appeals
# for the Federal Circuit

In re QUEEN'S UNIVERSITY AT KINGSTON and
PARTEQ RESEARCH AND DEVELOPMENT INNOVATIONS,

*Petitioners.*

*On Petition for Writ of Mandamus to the United States District*
*Court for the Eastern District of Texas, Marshall Division*
*No. 2:14-cv-00053-JRG-RSP, Honorable Rodney Gilstrap, District*
*Judge and Honorable Roy Payne Magistrate Judge*

## PETITION FOR WRIT OF MANDAMUS

Ian B. Crosby (Principal Attorney)
Rachel S. Black
Susman Godfrey LLP
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone:  (206) 516-3880

*Attorneys for Petitioners*

July 17, 2015

**Form 9**

FORM 9.  Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

In re Queen's University, et al. _____ v. Samsung Electronics, et al. _____

No. _____

# CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Queen's University and PARTEQ R&D certifies the following (use "None" if applicable; use extra sheets if necessary):

1.     The full name of every party or amicus represented by me is:

Queen's University at Kingston and PARTEQ Research and Development Innovations

_____

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

NA

_____

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

NA

_____

4.  ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

See Attached

_____

7/17/2015
_____
Date

_____
Signature of counsel

Ian B. Crosby
_____
Printed name of counsel

Please Note: All questions must be answered

cc: _see attached_____

124

## IDENTITY OF PARTIES AND COUNSEL

**PETITIONERS:**    Queen's University at Kingston
                    PARTEQ Research and Development

*Represented By:*
Ian B. Crosby - *Principal Attorney*
WA State Bar No. 28461
Rachel S. Black
WA State Bar No. 32204
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone:  (206) 516-3880
icrosby@susmangodfrey.com
rblack@susmangodfrey.com

Shawn Daniel Blackburn
Texas State Bar No. 24089989
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  (713) 653-7873
sblackburn@susmangodfrey.com

S. Calvin Capshaw
Texas State Bar No. 03783900
Elizabeth L. DeRieux
Texas State Bar No. 05770585
D. Jeffrey Rambin
Texas State Bar No. 00791478
CAPSHAW DeRIEUX L.L.P.
114 East Commerce Avenue
Gladewater, Texas 75647
Telephone: (903) 236-9800
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com
jrambin@capshawlaw.com

Jack Wesley Hill
Texas State Bar No. 24032294
WARD, SMITH & HILL, PLLC
P.O. Box 1231
1127 Judson Rd., Suite 220
Longview, Texas 75601
Telephone: (903) 757-6400
wh@wsfirm.com

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST ................................................................. i

IDENTITY OF PARTIES AND COUNSEL ............................................. ii

TABLE OF CONTENTS ........................................................................ iv

TABLE OF AUTHORITIES .................................................................. vi

I.    JURISDICTION .............................................................................. 1

II.   PRELIMINARY STATEMENT ....................................................... 1

III.  RELIEF SOUGHT ........................................................................... 2

IV.   ISSUE PRESENTED ....................................................................... 2

V.    FACTS AND PROCEDURAL HISTORY ....................................... 2

VI.   ARGUMENT .................................................................................... 5

      A.    Mandamus is the appropriate vehicle to resolve the
            unsettled and important issue of privilege presented
            in this case. ............................................................................. 5

      B.    The Congressional scheme of treating patent agents
            and lawyers equivalently requires uniform
            recognition of an equivalent privilege for
            communications with both. ..................................................... 7

            1.    Federal Circuit law controls the existence of a
                  patent agent privilege. ................................................... 8

            2.    The Supreme Court's prohibition on disparate
                  treatment of patent agents requires
                  recognition of an equivalent communications
                  privilege. ........................................................................ 9

3.    The district court opinions refusing to
recognize a patent agent privilege are
unpersuasive. ................................................................ 13

VII.  CONCLUSION ................................................................ 14

# TABLE OF AUTHORITIES

*Page(s)*

## Cases

*Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*,
    265 F.3d 1294 (Fed. Cir. 2001) ........................................................ 8

*Agfa Corp. v. Creo Products*, No. Civ.A. 00-10836-GAO,
    2002 WL 1787534 (D. Mass. Aug. 1, 2002) ................................. 5, 13

*Bogosian v. Gulf Oil Corp.*,
    738 F.2d 587 (3d Cir.1984) ................................................................. 7

*Buyer's Direct Inc. v. Belk, Inc.*, No. SACV 12-00370-DOC,
    2012 WL 1416639 (C.D. Cal. Apr. 24, 2012) ........................ 5, 11, 12

*Dow Chem. Co. v. Atl. Richfield Co.*, No. 83-CV-3763,
    1985 WL 71991 (E.D. Mich. Apr. 23, 1985) ................... 5, 11, 12, 13

*E.I. du Pont de Nemours & Co v. MacDermid, Inc.*,
    2009 WL 3048421 (D.N.J. 2009) ..................................................... 14

*Hunt v. Blackburn*,
    128 U.S. 464 (1888) ......................................................................... 10

*In re Ampicillin*,
    81 F.R.D. 395 (D.D.C.1978) ........................................... 10, 11, 12, 13

*In re EMC Corp.*,
    677 F.3d 1351 (Fed. Cir. 2012) ........................................................ 6

*In re MSTG, Inc.*,
    675 F.3d 1337 (Fed. Cir. 2012) ........................................... 5, 7, 8, 13

*In re Princo Corp.*,
    478 F.3d 1345 (Fed. Cir. 2007) ........................................................ 1

*In re Rivastigmine Patent Litigation*,
    237 F.R.D. 69 (S.D. N.Y. 2006) ................................................... 5, 13

*In re Spalding Sports Worldwide, Inc.*,
    203 F.3d 800 (Fed.Cir.2000) ...................................... 6, 13

*Midwest Indus., Inc. v. Karavan*,
    175 F.3d 1356 (Fed. Cir. 1999) .................................... 8

*Mold Masters Ltd. v. Husky Injection Molding Sys., Ltd.,* No. 01 C1576,
    2001 WL 1268587 (N.D.Ill. 2001) ............................... 5, 12

*Panduit Corp. v. All States Plastic Mfg. Co.*,
    744 F.2d 1564 (Fed. Cir. 1984) .................................... 9

*Park v. Cas Enterprises, Inc.*,
    2009 WL 3565293 (S.D. Cal. 2009) .............................. 5, 14

*Polyvision Corp. v. Smart Techs. Inc.,* No. 1:03–CV–476,
    2006 WL 581037 (W.D. Mich. 2006) ........................... 5, 12

*Prowess, Inc. v. Raysearch Laboratories AB*,
    2013 WL 247531 (D. Md. 2013) .................................. 5, 13

*Schlagenhauf v. Holder*,
    379 U.S. 104 (1964) ................................................ 6

*Sneider v. Kimberly-Clark Corp.*,
    91 F.R.D. 1 (N.D. Ill. 1980) ........................................ 5, 14

*Sperry v. Florida*,
    373 U.S. 379 (1963) ............................................ passim

*Stryker Corp. v. Intermedics Orthopedics, Inc.*,
    145 F.R.D. 298 (E.D.N.Y. 1992) ................................ 13

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ............................................... 10

*Vernitron Medical Products, Inc.*, No. 616-73,
    1975 WL 2116 (D.N.J. 1975) ................................. 5, 12, 13

*Woods on Behalf of T.W. v. New Jersey Dep't of Educ.*,
    858 F. Supp. 51 (D.N.J. 1993) ................................... 13

**Statutes**

28 U.S.C. §1295...................................................................1

28 U.S.C. §1651...................................................................1

**Rules and Regulations**

37 C.F.R. 1.56....................................................................8

Rule 72(a) ........................................................................4

**Other Authorities**

16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
    *Federal Practice and Procedure: Jurisdiction and Related*
    *Matters* § 3935.3 (2d ed.1996) .........................................6

*Model Code of Professional Responsibility Canon 4* (eff. Jan. 1, 1970)..12

# I.  JURISDICTION

This Court has jurisdiction to issue a writ of mandamus under 28 U.S.C. §1651 in this case because this case arises under the patent laws of the United States and this Court would therefore have jurisdiction in this case on direct appeal under 28 U.S.C. §1295. *See In re Princo Corp.,* 478 F.3d 1345, 1351 (Fed. Cir. 2007).

# II.  PRELIMINARY STATEMENT

This petition challenges the decision by the district court to compel the production of confidential communications between employees of Petitioners/Plaintiffs Queen's University at Kingston and PARTEQ Research and Development ("Queen's University") and their registered patent agents concerning the prosecution of certain patents in suit. *See* District Court Docket Entry ("Dkt. No.") 149 at 2; A-248. Multiple courts have recognized that such documents are privileged, due to the highly sensitive nature of their content and to the special role granted by Congress to practitioners who are registered to practice before the Patent and Trademark Office ("PTO"). The district court abused its discretion in failing to recognize this privilege, and exceeded it powers in ordering the production of documents to which the privilege applies. This Court should direct the district court to withdraw its order compelling the production of Queen's University's privileged communications with its patent agent. Absent such direction, Queen's University will be

1

irreparably harmed by the disclosure of the highly sensitive opinions, analyses, and impressions that those communications convey.

## III. RELIEF SOUGHT

Queen's University respectfully petitions for a writ of mandamus directing the United States District Court for the Eastern District of Texas to withdraw its Order compelling the production of communications between Queen's University employees and their patent agents. Dkt. No. 149, *Queen's University at Kingston, et al. v. Samsung Electronics Co., Ltd., et al.*, No. 2:14-cv-00053-JRG-RSP; A-247.

## IV. ISSUE PRESENTED

Whether the district court abused its discretion in failing to recognize privilege over confidential communications between employees of Queen's University and their patent agents, who are registered to practice before the PTO, concerning the prosecution of Queen's University's patents, and exceeded its powers in ordering those communications to be produced, where the magistrate judge to whom the matter was referred acknowledged the federal authority recognizing a patent agent privilege and encouraged Queen's University to seek appellate review.

## V.  FACTS AND PROCEDURAL HISTORY

Plaintiff Queen's University was established in 1841 in Kingston, Ontario and is one of Canada's oldest universities. Dkt. No. 1 at 2; A-2.

It is currently one of Canada's leading research universities. *Id.* Queen's University founded PARTEQ in 1987 in order to commercialize intellectual property that arose from that research, while returning the proceeds to Queen's University. *Id.* at 3. PARTEQ is a not-for-profit organization that provides institutional researchers with the support necessary to publicize their discoveries. *Id.* Queen's University is the assignee of U.S. Patent Nos. 7,762,665; 8,096,660; and 8,322,856 (the "Patents-in-Suit"), and PARTEQ is their exclusive licensee. *Id.* In broad terms, those patents cover Attentive User Interfaces ("AUI,"), a technology that allows devices to modulate their operations based on users' attention. *See* Dkt. No. 1 at 3, A-3.

On January 31, 2014, Queen's University and PARTEQ filed a Complaint against Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. ("Samsung"), alleging that the SmartPause feature in many of Samsung's newest devices infringed the Patents-in-Suit. *Id.* at 5. The district court set trial for November 9, 2015. Dkt. No. 30 at 1, A-12.

On June 1, 2015, only one week before the close of fact discovery, Samsung moved the district court to compel the production of documents that Queen's University withheld on the basis of privilege. Dkt. No. 134; A-16. Those documents include communications between Queen's University employees and their registered patent agents re-

3

garding the prosecution of the Patents-in-Suit. *See id.* at 2. The Court held a hearing on the motion on June 17, 2015. A-273. During that hearing, Magistrate Judge Roy Payne recognized that federal authority was divided over the issue of patent agent privilege, acknowledged that there was authority that counseled maintaining privilege over Queen's University's communications with its patent agents, and encouraged Queen's University to seek appellate review. *See* A-287 6/17/15 Hearing Tr. at 46:17-21 ("But in any event, I know there's a split in authority and all I can do is—is say which side of it I—I think we should fall into . . . but I hope that you're able to get—get the matter addressed by the higher court."). Still, the judge granted Samsung's motion and issued an order compelling the production of communications between Queen's University and its patent agents. Dkt. No. 149 at 2; A-248.

Queen's University timely filed Rule 72(a) Objections to the Magistrate Judge's Order. Dkt. No. 155; A-249. The district court judge denied those objections. Dkt. No. 172; A-264. Queen's University then sought to modify the magistrate judge's order to certify interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Dkt. No. 176; A-265. The magistrate judge denied that motion, but permitted the production of the documents at issue to be stayed pending the outcome of this Petition. Dkt. No. 179; A-271.

4

# VI. ARGUMENT

## A. Mandamus is the appropriate vehicle to resolve the unsettled and important issue of privilege presented in this case.

This Court has specifically found mandamus to be the proper mechanism for addressing a novel issue of privilege in precisely the circumstances of this case. In *In re MSTG, Inc.*, 675 F.3d 1337, 1341 (Fed. Cir. 2012), this Court found that mandamus review of an order granting a motion to compel was "appropriate as to [a] privilege issue" that, like the privilege over communications with patent agents asserted here, was "a matter of first impression before this court and one on which district courts are split."[1] While "[t]he remedy of mandamus is available

---

[1] *Compare Buyer's Direct Inc. v. Belk, Inc.*, No. SACV 12-00370-DOC, 2012 WL 1416639, at *3 (C.D. Cal. Apr. 24, 2012); *Polyvision Corp. v. Smart Techs. Inc.*, No. 1:03–CV–476, 2006 WL 581037, at *2 (W.D. Mich. 2006); *Mold Masters Ltd. v. Husky Injection Molding Sys., Ltd.*, No. 01 C1576, 2001 WL 1268587, at *4-*5 (N.D.Ill. 2001); *Dow Chem. Co. v. Atl. Richfield Co.*, No. 83-CV-3763, 1985 WL 71991, at *5 (E.D. Mich. Apr. 23, 1985); *Ampicillin Antitrust Litigation*, 81 F.R.D. 377, 393-94 (D.D.C. 1978); *Vernitron Medical Products, Inc.*, No. 616-73, 1975 WL 2116, at *1-*2 (D.N.J. 1975) (all recognizing patent agent privilege), *with Prowess, Inc. v. Raysearch Laboratories AB*, 2013 WL 247531, at *5 (D. Md. 2013); *In re Rivastigmine Patent Litigation*, 237 F.R.D. 69, 102 (S.D. N.Y. 2006); *Agfa Corp. v. Creo Products*, No. Civ.A. 00-10836-GAO, 2002 WL 1787534, at *3 (D. Mass. Aug. 1, 2002); *Park v. Cas Enterprises, Inc.*, 2009 WL 3565293, at *3 (S.D. Cal. 2009); and *Sneider v. Kimberly-Clark Corp.*, 91 F.R.D. 1, 5 (N.D. Ill. 1980) (all declining to recognize patent agent privilege).

only in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power," such a situation may be presented "where a discovery order 'raises a novel and important question of power to compel discovery, or ... reflects substantial uncertainty and confusion in the district courts.'" *Id.* (quoting 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 3935.3 (2d ed.1996)); *accord Schlagenhauf v. Holder*, 379 U.S. 104 (1964) ("[T]he petition was properly before the court on ... an issue of first impression that called for the construction and application of [a discovery rule] in a new context."). A district court's erroneous reliance on an incorrect determination of law also constitutes an abuse of discretion that may warrant mandamus review. *See In re EMC Corp.*, 677 F.3d 1351, 1355 (Fed. Cir. 2012).

Orders compelling the production of documents over a claim of privilege also satisfy the requirement for mandamus review that a party "lack adequate alternative means to obtain the relief sought." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 804 (Fed.Cir.2000). "[M]andamus may properly be used as a means of immediate appellate review of orders compelling the production of documents claimed to be protected by privilege or other interests in confidentiality" because without it, "litigants might be compelled to disclose documents that are protected from disclosure by strong public policy." *Bogosian v. Gulf Oil*

6

*Corp.*, 738 F.2d 587, 591–92 (3d Cir.1984). Thus this Court deemed mandamus review of an asserted privilege over settlement communications to be warranted in *MSTG* because "[t]he confidentiality of the settlement negotiations would be lost if review were denied until final judgment, and immediate resolution of this issue would avoid discovery that would undermine the claimed important public interests in protecting settlement discussions from discovery." The same rationale applies to the confidential communications between Queen's University's employees and their patent agent here.

In short, mandamus review is warranted here to resolve an issue that has long split the district courts, remove enduring uncertainty for patentees and litigants, and prevent the irreversible exposure of highly sensitive legal communication that would occur pending direct appeal.

## B. The Congressional scheme of treating patent agents and lawyers equivalently requires uniform recognition of an equivalent privilege for communications with both.

The Supreme Court's recognition that both lawyers and registered patent agents serve an equivalent function in relation to patent prosecution compels the recognition of an equivalent privilege for client communications as a matter of Federal Circuit law. District Court cases limiting the privilege to communications with licensed attorneys would frustrate Congress's intent to allow applicants to freely choose qualified patent agents to represent them before the Patent Office.

7

### 1. *Federal Circuit law controls the existence of a patent agent privilege.*

As a threshold matter, whether a patent agent privilege exists is a matter of Federal Circuit law. Federal Circuit law applies not only to substantive issues of patent law, but also to procedural issues that "pertain[] to patent law …." *Midwest Indus., Inc. v. Karavan*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (*en banc* in relevant part). "As to discovery matters, [this Court has] held that Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law." *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1307 (Fed. Cir. 2001). This Court has "applied [its] own law to issues of the scope of the attorney-client privilege and work product doctrine" based on the implications of such determinations for such substantive issues of patent law as the advice of counsel defense to willfulness and the doctrine of inequitable conduct. *See MSTG*, 675 F.3d at 1341. Whether a privilege applies to communications with patent agents is at least relevant to the latter issue of patent law, inasmuch as patent agents are subject to the same duty of candor as licensed attorneys while prosecuting patents. *See* 37 C.F.R. 1.56.

Moreover, the controlling question—whether Congress intended registered patent agents to be treated equivalently with attorneys in all respects when prosecuting patents—is one that is unique to patent law

8

and requires the "uniformity … [t]hat was the underlying motivation for the creation of this court." *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574 (Fed. Cir. 1984). Applying regional circuit law to this question would frustrate that intent to achieve uniformity and multiply "confusion and conflicts in the federal judicial system," *id.*, by making the applicability of a privilege to communications with registered patent agents depend on where patents might be litigated many years later. Federal Circuit law thus must control whether such a privilege exists.

### 2. The Supreme Court's prohibition on disparate treatment of patent agents requires recognition of an equivalent communications privilege.

In *Sperry v. Florida*, 373 U.S. 379 (1963), the Supreme Court held that a state could not prohibit a registered patent agent who was not a licensed attorney from advising clients respecting patent prosecution activities in which he was equally authorized to engage under federal law. From the foundation of the patent bar, the Court found unwavering congressional and regulatory intent to permit technically skilled laypersons to engage in patent prosecution on an equal footing with attorneys. *Id.* at 388–89. The history of the regulation of patent practice, the Court concluded, shows "congressional (and administrative) recognition that registration in the Patent Office confers a *right* to practice be-

fore the Office" that may not be defeated by state restrictions on the practice of law. *Id.* at 388 (emphasis added).

Restricting the privilege protecting the provision of legal advice regarding patent prosecution to communications with licensed attorneys would defeat the right of patent agents to practice before the Patent Office as surely as the outright prohibition overturned in *Sperry*. The right of patent agents to provide legal advice regarding patent prosecution depends in its exercise on the same "full and frank communication" with clients through which the attorney-client privilege allows lawyers to perform the same service. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Indeed, the Court has long recognized that the rendition of legal advice "'can only be safely and readily availed of when free from the consequences or the apprehension of disclosure.'" *Id.* (quoting *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888)). Exposing communications with registered patent agents to discovery prevents them from providing the very service that Congress has determined they are entitled to provide.

A well-reasoned line of District Court cases follow the logic of *Sperry* in holding that communications with patent agents regarding prosecution are privileged. The leading treatment of the District Court for the District of Columbia in *In re Ampicillin* reasons:

> Congress, in creating the Patent Office, has expressly permitted both patent attorneys and patent agents to practice before that office. The registered patent agent is required to have a full and working knowledge of

10

the law of patents and is even regulated by the same
standards, including the Code of Professional Respon-
sibility, as are applied to attorneys in all courts. Thus,
in appearance and fact, the registered patent agent
stands on the same footing as an attorney in proceed-
ings before the Patent Office. Therefore, under the
congressional scheme, a client may freely choose be-
tween a patent attorney and a registered patent agent
for representation in those proceedings. That freedom
of selection, protected by the Supreme Court in *Sperry*,
would, however, be substantially impaired if as basic a
protection as the attorney-client privilege were afford-
ed to communications involving patent attorneys but
not to those involving patent agents. As a result, in
order not to frustrate this congressional scheme, the
attorney-client privilege must be available to commu-
nications of registered patent agents.

81 F.R.D. at 393; *accord Buyer's Direct*, 2012 WL 1416639, at *3 ("[T]he
congressional goal of allowing clients to choose between an attorney and
a patent agent representative in proceedings before the USPTO would
be frustrated if the attorney-client privilege were not available to com-
munications with registered patent agents.").

Other courts have noted that exposing patent agent communica-
tions to discovery would be inconsistent with the requirement of the
Code of Federal Regulations that pending and abandoned patent appli-
cations be kept secret. *Dow*, 1985 WL 71991, at *5. "[A] patent agent
[would be further painted] into an ethical corner if his communications
with a client [were] not protected by the privilege" because he is subject
to the same ethical dictate as a lawyer to "'preserve the confidences and
secrets of a client.'" *Id.* at *6 (quoting *Model Code of Professional Re-*

11

*sponsibility Canon 4* (eff. Jan. 1, 1970)). The need for certain applicants to obtain representation with particular technical qualifications that may not be possessed by attorneys further justifies affording such practitioners the same scope of privilege. *Vernitron*, 1975 WL 2116, at *1-*2.

Numerous recent courts have followed the reasoning espoused in *Dow*, *Ampicillin*, and *Vernitron*, explaining that recognition of patent agent privilege is critical to the healthy function of the patent prosecution process. *See Buyer's Direct*, 2012 WL 1416639, at *3 ("[T]he congressional goal of allowing clients to choose between an attorney and a patent agent representative in proceedings before the USPTO would be frustrated if the attorney-client privilege were not available to communications with registered patent agents."); *Polyvision Corp.*, 2006 WL 581037, at *2 ("Both the registered patent agent and the limited arena in which they practice, the USPTO, are creatures of Congress, and therefore the registered patent agents should be afforded the recognition necessary to accomplish their purposes."); *Mold Masters Ltd.*, 2001 WL 1268587, at *4-*5 ("[T]here is no logical and appropriate basis for drawing a distinction between a lawyer and nonlawyer in terms of applying the attorney-client privilege, especially where, as here, the federal agency itself draws no such distinction, thereby making the label of lawyer or nonlawyer practically irrelevant anyway."); *accord Stryker Corp. v. Intermedics Orthopedics, Inc.,* 145 F.R.D. 298, 304 (E.D.N.Y.

12

1992); *see also Sperry v. State of Fla. ex. rel. Florida Bar*, 373 U.S. 379, 402 (1963) (noting that the PTO had stated that "there [was] no significant difference between lawyers and [patent agent] nonlawyers either with respect to their ability to handle the work or with respect to their ethical conduct") (alterations added); *Woods on Behalf of T.W. v. New Jersey Dep't of Educ.*, 858 F. Supp. 51, 55 (D.N.J. 1993) (extending privilege to communications between client and lay advocate in administrative proceeding).

This Court should follow the logic of *Sperry* as elucidated by these persuasive opinions and preserve the privilege over confidential communications between Queen's University's employees and their registered patent agents.

### 3.  *The district court opinions refusing to recognize a patent agent privilege are unpersuasive.*

While other district courts have not recognized patent agent privilege in certain contexts, those cases should not persuade this Court. The courts in *Prowess, Inc.*, *Rivastigmine*, and *Agfa Corp.* were guided by regional circuit, rather than Federal Circuit law, which was error. *See MSTG*, 675 F.3d at 1341; *Spalding*, 203 F.3d at 803-04; *Prowess, Inc.*, 2013 WL 247531, at *5; *Rivastigmine*, 237 F.R.D. at 102; *Agfa Corp.*, 2002 WL 1787534, at *3. Furthermore, unlike the courts in *Dow*, *Ampicillin*, and *Vernitron*, these decisions fail to acknowledge the central role

13

that registered patent agents play in the patent prosecution system in the United States.

Nor are *Park* or *Sneider* convincing: in those cases, the courts did not specify that the communications with the patent agent were for the federally sanctioned purpose of patent prosecution before the PTO, as they are in this case. *See Park*, 2009 WL 3565293, at *3; *Sneider*, 91 F.R.D. at 5; *see also E.I. du Pont de Nemours & Co v. MacDermid, Inc.*, 2009 WL 3048421, at *5 (D.N.J. 2009) (refusing to recognize a privilege between a client and its registered patent agent because the communications were clearly not related to patent prosecution). Here, the communications between Queen's University employees and their registered patent agents were for the purpose of prosecuting patents in the federal system, the precise purpose for which those agents were commissioned.

In sum, the District Court cases that decline to recognize the patent agent privilege either fail to engage with the controlling logic of *Sperry* or address assertions of privilege outside the area in which *Sperry* holds that patent agents operate on an equivalent footing with lawyers.

## VII.    CONCLUSION

Queen's University respectfully asks this Court to issue a writ of mandamus directing the district court to withdraw its order compelling the production of Queen's University's privileged communications with

its registered patent agents. On this issue of first impression, this Court should exercise its authority to guide the district courts, which are divided over this issue, and recognize that privilege should exist between inventors and the agents who have been sanctioned by Congress to represent them in government proceedings. District court opinions that have held otherwise are unpersuasive, because they do not adequately account for the important and necessary role of these federally established practitioners. The district court abused its discretion and exceeded its powers in ordering the production of Queen's University's communications with its patent agent, and Queen's University's only recourse is a writ from this Court.

Dated: July 17, 2015                    Respectfully submitted,

                                        /s/  Ian B. Crosby
                                        Ian B. Crosby (*Admitted, E.D. Tex.*)
                                        WA State Bar No. 28461
                                        Rachel S. Black (*Admitted, E.D. Tex.*)
                                        WA State Bar No. 32204
                                        SUSMAN GODFREY LLP
                                        1201 Third Avenue, Suite 3800
                                        Seattle, Washington 98101
                                        Telephone:  (206) 516-3880
                                        Fax:  (206) 516-3883
                                        Email: icrosby@susmangodfrey.com
                                        Email: rblack@susmangodfrey.com

*Counsel for Plaintiffs Queen's University at Kingston and*
*PARTEQ Research and Development Innovations*

# CERTIFICATE OF SERVICE

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
Misc. No. _____
-------------------------------------------------------------)
In re QUEEN'S UNIVERSITY AT KINGSTON
and PARTEQ RESEARCH AND
DEVELOPMENT INNOVATIONS,
                    Petitioners.
-------------------------------------------------------------)

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by Susman Godfrey LLP, attorneys for Petitioners to print this document. I am an employee of Counsel Press.

On the **17th Day of July, 2015**, I served the within **Petition for Writ of Mandamus** upon:

Matthew M. Wolf
Jin-Suk Park
John E. Nilsson
Tara L. Williamson
Samuel M. Drezdzon
Patrick C. Reidy
Joshua M. Rychlinski
Arnold & Porter LLP
555 12th Street, NW
Washington, DC 20004
Telephone: (202)942-5000
Facsimile: (202)942-5555

Ryan M. Nishimoto
ARNOLD &PORTER LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-5844
Telephone: (213)243-4000
Facsimile: (213)243-4199

16

Melissa Smith
William R. Lamb
Gillam & Smith, LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903)934-9257
Facsimile: (903)934-9257

**via Express Mail and E-Mail,** by causing true copies of each to be deposited, enclosed in a properly addressed wrapper, in an official depository of the U.S. Postal Service.

Additional, a copy will be sent to these U.S. District Judges:

| The Honorable Roy Payne | The Honorable Rodney Gilstrap |
|---|---|
| Magistrate Judge | District Judge |
| Sam B. Hall, Jr. Federal Building and | Sam B. Hall, Jr. Federal Building and United States Courthouse |
| United States Courthouse | |
| 100 East Houston Street | 100 East Houston Street |
| Marshall, TX 75670 | Marshall, Texas 75670 |
| PHONE: (903) 935-2498 | PHONE: (903) 935-3868 |
| FAX: (903) 938-7819 | FAX: (903) 935-2295 |

**via Express Mail,** by causing a true copies of each to be deposited, enclosed in a properly addressed wrapper, in an official depository of the U.S. Postal Service.

Unless otherwise noted, the required copies have been filed via the Court's CM/ECF on this date.

July 17, 2015

John C. Kruesi, Jr.
Counsel Press